UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In re:                                                                                    Case No. 9:11-bk-10302-JPH
                                                                                           Chapter 11
Dennis J. Fullenkamp,

    Debtor.

_____/

**MEMORANDUM OPINION ON CREDITOR'S OBJECTION TO
<u>DEBTOR'S APPLICATION TO EMPLOY HAHN, LOESER & PARKS, LLP</u>**
(Doc. Nos. 12 and 122)

    Bankruptcy Code Section 327(a) provides that a debtor-in-possession may employ a law firm only if it (i) does not hold or represent an interest adverse to the estate; and (ii) is otherwise disinterested. Here, the Debtor seeks to employ Hahn Loeser & Parks, LLP. But Multibank 2009-1 RES-ADV Venture, LLC—an alleged creditor in this case—complains that Hahn Loeser failed to disclose that it currently represents an entity whose attorney-in-fact is a subsidiary of Multibank's attorney-in-fact in a separate foreclosure action. According to Multibank, that representation—and Hahn Loeser's failure to disclose it—disqualifies the firm from representing the Debtor in this case.

    The Court concludes that Hahn Loeser's representation of the other entity is not a conflict of interest. Nor does it otherwise preclude the firm from being disinterested. Although Hahn Loeser should have disclosed that representation under Bankruptcy Rule 2014, the Court is satisfied the failure to do so was inadvertent. And in any event, it is not grounds for disqualifying Hahn Loeser from representing the Debtor. Accordingly, the objection to the Debtor's application to employ Hahn Loeser should overruled and the Debtor's application should be granted.

**Background**

The Debtor filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 27, 2011. Five days later, the Debtor filed his application to employ Hahn Loeser.[1] In his application, the Debtor alleged that Hahn Loeser had conducted a detailed search of its client database and determined that it does not represent (nor had it previously represented) any material parties-in-interest in this case.[2] The Debtor also alleged that Hahn Loeser neither represents nor holds any interest materially adverse to the Debtor's estate and, as a consequence, is disinterested under Bankruptcy Code Section 101(14).[3]

Attached to the Debtor's application was the declaration of John S. Sarrett, a Hahn Loeser partner. Mr. Sarrett testified in his declaration that Hahn Loeser, as set forth in the Debtor's application, neither represents nor holds any interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders.[4] Multibank objected to the Debtor's application to employ Hahn Loeser.[5]

Multibank initially raised three grounds for its objection: (i) the Debtor's estate should not have to pay for Hahn Loeser's travel costs (the lead attorney is located in Cleveland, Ohio); (ii) the Debtor is not entitled to use cash collateral to pay Hahn Loeser; and (iii) Hahn Loeser failed to disclose a potential conflict of interest.[6] According to Multibank, Hahn Loeser was

---

[1] Doc. No. 12.

[2] *Id.* at ¶ 23.

[3] *Id.* at ¶ 23.

[4] *Id.* at Exhibit A, ¶¶ 16-21.

[5] Doc. No. 122.

[6] *Id.*

retained by RL BB-OH Financial, LLC to represent the entity in a mortgage foreclosure action Ohio.[7] RL BB-OH's sole member is RL BB Financial, LLC.[8] And Rialto Capital Advisors, LLC is the attorney-in-fact for RL BB Financial.[9]

The significance of that relationship, so the Court is told, is that Rialto is also the attorney-in-fact for Multibank's sole managing member—RL RES 2009-1 Investments, LLC. Multibank alleged in its objection that it was reviewing the consequences of that relationship, but as of the date of its objection (filed 48 days after the Debtor filed his application), it was not certain of the impact that relationship had on the firm's disinterestedness.[10]

After receiving Multibank's objection, Daniel DeMarco (a Hahn Loeser partner) filed a supplemental declaration in support of the Debtor's application.[11] According to his declaration, Mr. DeMarco was unaware that his firm represented RL BB-OH.[12] But he testified that the firm's representation of that entity is unrelated to the Debtor or his obligations to any of his creditors.[13] Mr. DeMarco also testified that he investigated his firm's relationship with Rialto and determined that the firm represents Rialto's ultimate parent corporation—Lennar Corporation—in two unrelated state court actions.[14] Although Hahn Loeser did not believe either of those relationships created a conflict, the firm implemented ethical walls screening the

---

[7] *Id.* at ¶¶ 12 & 13.

[8] *Id.*

[9] *Id.*

[10] *Id.* at ¶ 14.

[11] Doc. No. 145.

[12] *Id.* at ¶ 2.

[13] *Id.* at ¶ 3.

[14] *Id.* at ¶ 4.

lawyers representing the Debtor from the lawyers representing RL BB-OH and Lennar to preserve client confidences.[15]

Multibank later filed two affidavits in support of its objection. In those affidavits, Multibank clarified the relationship between Multibank, Rialto, and RL BB-OH.[16] According to Multibank's affidavits, Multibank and RL BB-OH were formed to own loans secured by real property.[17] The corporate structure for those two entities is substantially the same. They both have a sole managing member: RL RES (for Multibank) and RL BB Financial (for RL BB-OH). And both of those managing members take direction from an attorney-in-fact.[18] The attorney-in-fact for Multibank is Rialto.[19] RL BB-OH's attorney-in-fact is Rialto Capital Advisors of New York, LLC.[20]

Vice-presidents for each of the attorneys-in-fact—Rialto and Rialto NY—testified that those entities work together to manage the loans owned by Multibank and RL BB-OH (as well as other entities).[21] And according to the affidavits, various Rialto and Rialto NY asset managers hold routine meetings (generally weekly) to discuss strategy for managing the Rialto and Rialto

---

[15] *Id.*

[16] Doc. Nos. 210 & 231.

[17] Doc. No. 210 at ¶ 5; Doc. No. 231 at ¶ 5.

[18] Doc. No. 210 at ¶ 5; Doc. No. 231 at ¶ 5.

[19] Doc. No. 210 at ¶ 5.

[20] Doc. No. 231 at ¶ 5.

[21] Doc. No. 210 at ¶¶ 10-12; Doc. No. 231 at ¶¶ 10-12.

NY loan portfolios.[22] That strategy is, in turn, shared with outside counsel in the course of counsel's representation of entities like Multibank and RL BB-OH.[23]

Multibank claims this relationship gives rise to an impermissible conflict of interest.[24] Multibank claims, in particular, that Hahn Loeser's representation of the Debtor would violate Rules 4-1.7 and 4-1.9, Rules Regulating the Florida Bar.[25] Multibank also claims the relationship creates a conflict—and, as a consequence, Hahn Loeser cannot be disinterested—because the dual representation would cause Hahn Loeser to act differently than if it did not represent the Debtor and RL BB-OH.[26] Finally, Multibank claims Hahn Loeser should be disqualified from representing the Debtor—irrespective of the existence of any conflict—because the firm failed to disclose its representation of RL BB-OH in its initial declaration.[27]

## Conclusions of Law

*Multibank Does Not Have Standing to Challenge Hahn Loeser's Appointment*

Only the U.S. Trustee, creditors, and other parties-in-interest have standing to object to a professional employment application under Section 327.[28] The Bankruptcy Code defines a creditor as an entity holding a claim against the debtor that arose on or before the petition date.[29] "Party-in-interest" is not defined in the Bankruptcy Code. But courts have generally concluded

---

[22] Doc. No. 210 at ¶¶ 10-12; Doc. No. 231 at ¶¶ 10-12.

[23] Doc. No. 210 at ¶¶ 10-12; Doc. No. 231 at ¶¶ 10-12.

[24] Doc. No. 195 at ¶¶ 25-39.

[25] *Id.* at ¶¶ 34-39.

[26] *Id.* at ¶¶ 25-33.

[27] *Id.* at ¶¶ 16-24.

[28] *In re Elias*, No. 02-41340, 2005 WL 4705220, at *2-3 (Bankr. D. Idaho June 10, 2005); *In re Stone*, No. 03-40013, 2003 WL 25273852, at *2-3 (Bankr. D. Idaho June 11, 2003).

[29] 11 U.S.C. § 101(10)(A).

that a party must have a "pecuniary interest in the outcome of the bankruptcy" to be a party-in-interest.[30] So Multibank must either hold a prepetition claim or have a pecuniary interest in this bankruptcy case to have standing to object to Hahn Loeser's application.

It does not appear from the record that Multibank has either. Multibank did file a proof of claim in this bankruptcy based solely on a multi-million dollar state court judgment.[31] But Multibank concedes in its proof of claim that it assigned its claim to RES-FL Shoemaker, LLC.[32] Multibank claims the assignment is of no consequence because Florida Rule of Civil Procedure 1.260 allows a party that assigns its interest in a cause of action during the pendency of a lawsuit to continue the lawsuit in its own name.[33] That procedural rule, however, applies only to maintaining a pending lawsuit in the original creditor's name. Nothing in that rule—or its federal counterpart (which Multibank also cites)—permits Multibank to maintain that claim in this bankruptcy proceeding.

Because it assigned its rights under the promissory notes giving rise to the final judgment, Multibank does not hold a prepetition claim, nor does it have a pecuniary interest in this bankruptcy case. Accordingly, Multibank does not have standing to challenge Hahn Loeser's application. Nevertheless, the Court will consider Multibank's objections because the Court has an independent obligation to ensure that the application satisfies Section 327's requirements.[34]

---

[30] *In re Elias*, 2005 WL 4705220, at *2; *In re Stone*, 2003 WL 25273852, at *3.

[31] Claim No. 72-1.

[32] *Id.* at Summary of Claim, p. 2 n.2.

[33] Fla. R. Civ. P. 1.260(c).

[34] *In re Elias*, 2005 L 4705220, at *5 n.7; *In re Stone*, 2003 WL 25273852, at *3; *Schafer v. Maerlender (In re Maerlender)*, Adv. No. 04-2034, 2006 WL 996556, at *3 n.4 (Bankr. M.D.N.C. Apr. 14, 2006); *In re Penney*, 334 B.R. 517, 520 (Bankr. D. Mass. 2005).

*Hahn Loeser Satisfies Section 327's Requirements*

Section 327(a) provides a two-prong test to determine whether a debtor-in-possession may employ an attorney.[35] First, the debtor's attorney must not hold or represent an interest adverse to the bankruptcy estate.[36] Second, the debtor's attorney must be a disinterested person.[37] If either prong of the test is not satisfied, then the attorney is automatically disqualified from representing the estate."[38] Here, Hahn Loeser satisfies both prongs.

<u>Hahn Loeser Does Not Hold or Represent an
Interest Adverse to the Bankruptcy Estate</u>

The Bankruptcy Code does not define the phrase "hold or represent an interest adverse to the bankruptcy estate." But most courts follow the definition set out in *In re Roberts*.[39] Under the *Roberts* definition, to "hold an adverse interest" means to: (i) possess or assert mutually exclusive claims to the same economic interest (thereby creating either an actual or potential dispute between rival claimants); or (ii) possess a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities.[40] Whether an adverse interest exists is generally determined on a case-by-case basis.[41]

---

[35] *In re Keller Fin. Servs.*, 248 B.R. 859, 892 (Bankr. M.D. Fla. 2000).

[36] 11 U.S.C. § 327(a); *In re Keller Fin. Servs.*, 248 B.R. at 892.

[37] 11 U.S.C. § 327(a); *In re Keller Fin. Servs.*, 248 B.R. at 892 (citing *In re Angelika Films 57th Inc.*, 227 B.R. 29, 37 (Bankr. S.D.N.Y. 1998)).

[38] *In re Keller Fin. Servs.*, 248 B.R. at 892 (*In re Benjamin's-Arnolds, Inc.*, No. 4-90-6127, 1997 WL 86463, at *4 (Bankr. D. Minn. Feb. 28, 1997)).

[39] *Electro-Wire Prods., Inc. v. Sirote & Permutt P.C. (In re Prince)*, 40 F.3d 356, 361 (11th Cir. 1994) (following *In re Roberts*, 46 B.R. 815, 826-27 (Bankr. Utah 1985)).

[40] *Id.*

[41] *See, e.g.*, *In re Arochem Corp.*, 176 F.3d 610, 623 (2d Cir. 1999).

Courts, however, generally agree that Sections 327(a) and 327(c) impose a *per se* disqualification on any attorney who has an actual conflict of interest.[42] Some courts have held that an actual conflict of interest exists where there is "an active competition between two interests, in which one interest can only be served at the expense of the other."[43] Other courts have held that a conflict of interest exists where the representation of one client "may cause the debtor's attorney to act any differently than they would without the other representation."[44] Florida, of course, identifies prohibited conflicts of interest in the Rules Regulating the Florida Bar.

Here, there is no active competition between the Debtor's interests and those of RL BB-OH. RL BB-OH's claims—a state court foreclosure action in Ohio—are wholly unrelated to the Debtor and this bankruptcy case. Nor is there any likelihood that Hahn Loeser would represent the Debtor any differently than if it was not also representing RL BB-OH. The only conceivable evidence of that claim is Multibank's concern that Hahn Loeser's representation of the Debtor will create an ongoing appearance of impropriety that will prejudice Multibank's efforts to resolve its claims against the Debtor because, at least according to Multibank, interested parties may attack any settlement as not being negotiated at arm's length. That claim is unconvincing. And even if true, it would not create a disqualifying conflict of interest.

Moreover, Hahn Loeser's representation of the Debtor does not violate Rule 4-1.7, Rules Regulating the Florida Bar. Under Rule 4-1.7, an attorney shall not represent a client if the

---

[42] *In re Am. Energy Trading, Inc.*, No. 99-43507-11-JWV, 2003 WL 1785779, at *2 (Bankr. W.D Mo. Apr. 1, 2003).

[43] *Id.*

[44] *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 533 (Bankr. S.D. Fla. 1994).

representation will be directly adverse to another client.[45] Conflicts in litigation exist where there may be a substantial discrepancy in testimony, incompatibility in the positions taken in relation to an opposing party, or the fact that there are different settlement possibilities.[46] A conflict also exists where an attorney advocates against a client the attorney represents in another matter.

None of those situations exist here. Multibank does not claim that there is any discrepancy in testimony, incompatibility in the positions taken in relation to an opposing party, or different settlement possibilities as result of Hahn Loeser representing the Debtor. Multibank does suggest that Hahn Loeser is advocating against a client it represents in another matter. But, in fact, the Debtor is not adverse to RL BB-OH, and Multibank is not a firm client. Rather, the attorney-in-fact for RL BB-OH's sole managing member is a subsidiary of the attorney-in-fact for Multibank's sole managing member. Multibank does not cite—and the Court is not aware of—any legal authority for the proposition that Hahn Loeser's representation of the Debtor under these facts violates Rule 4-1.7.

The only conceivable basis for the existence of a conflict under the Rules Regulating the Florida Bar is Multibank's claim that confidential information may be shared. But that claim fails for two reasons. First, the professional rule of conduct (4-1.9) and case law (*State Farm Mutual Auto Insurance Co. v. K.A.W.*) that Multibank relies on both presuppose the existence of an attorney-client relationship and the use of information gained by the attorney during the course of representing a former client against that former client in a later proceeding. Here there

---

[45] R. Regulating Fla. Bar 4-1.7.

[46] *Id.* at comments.

is no allegation that Hahn Loeser's is using confidential information gained during its representation of RL BB-OH against that entity.

Second, even if there is concern that Hahn Loeser will use that information against Multibank, that concern can be remedied by screening the lawyers involved in both cases. Multibank suggests that screening is not permitted. But that is true only where there is an actual conflict of interest under Rule 4-1.7 or 4-1.9. No such conflict exists here.

Because no actual—or, for that matter, potential—conflict exists and any concerned about confidential information can be remedied by screening, the Court concludes that Hahn Loeser does not represent or hold an interest adverse to the Debtor's estate.

## Hahn Loeser is Disinterested

Bankruptcy Code Section 101(14)(C) defines a "disinterested person" as a person that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."[47] Unlike Section 327, which authorizes employment of professionals that "do not hold or represent an interest adverse to the estate," Section 101(14)(C) refers only to those who "have" disqualifying interests.[48] By its terms, then, Section 101(14)(C) "'implicate[s] only the personal interests of the professional whose disinterestedness is under consideration.'"[49]

So Hahn Loeser is disinterested unless the firm *itself* has an interest adverse to the estate. Multibank, however, does not allege Hahn Loeser has an adverse interest. Nor could it. There is

---

[47] 11 U.S.C. § 101(14)(C).

[48] *In re Arochem Corp.*, 176 F.3d at 629; *see also* 11 U.S.C. §§ 101(14)(C), 327(a).

[49] *In re Arochem Corp.*, 176 F.3d at 629.

no evidence that Hahn Loeser, for example, is a creditor in this case. Instead, the sole basis for Multibank's claim that Hahn Loser is not disinterested is Multibank's allegation that Hahn Loeser *represents* the holder of an adverse interest. But a professional does not run afoul of Section 101(14)(C)—in other words, the professional is not interested—simply because it represents a party holding an adverse interest. Because Hahn Loeser does not have an adverse interest, the Court concludes it is disinterested under Section 101(14)(C).

### *Hahn Loeser's Failure to Disclose its Representation of RL BB-OH Does Not Disqualify the Firm*

Even though Hahn Loeser's representation of RL BB does not disqualify the firm under Section 327, the firm nevertheless should have disclosed that representation to the Court under Bankruptcy Rule 2014. Rule 2014 requires that a professional seeking employment in a bankruptcy case submit a "verified statement . . . setting forth the person's connections" to the debtor, creditors, and any other party in interest.[50]

The requirements under Rule 2014 are more encompassing than the disinterested inquiry under Section 327.[51] Consideration under Section 327 is limited to interests that are "materially adverse." But Rule 2014 requires a "professional to disclose all of its relevant connections in its disclosure so that the bankruptcy court can determine if there are any conflicts or potential conflicts."[52] Indeed, an attorney must disclose "'all connections'" that are not so remote as to be *de minimis*."[53]

---

[50] Fed. R. Bankr. P. 2014(a).

[51] *In re Leslie Fay*, 175 B.R. at 536.

[52] *In re Citation Corp.*, 493 F.3d 1313, 1321 (11th Cir. 2007); *In re Leslie Fay*, 175 B.R. at 533 (explaining that Rule 2014 requires disclosure of "[a]ll facts that may have any bearing on the disinterestedness of a professional.").

[53] *In re Leslie Fay*, 175 B.R. at 536.

Courts have expressly held "there is 'no merit to the . . . argument that [a party] did not have to disclose its connections . . . because its attorneys did not feel that a conflict existed.'"[54] In *Leslie Fay Companies*, for instance, the Court explained that the debtor's attorney "had no right to 'make a unilateral determination regarding the relevance of a connection.'"[55] The Ninth Circuit Court of Appeal, in *In re Haldeman Pipe & Supply Co.*, similarly explained that attorney did not have "the right to withhold information because it is not apparent to him that there is a conflict."[56] Likewise, the Middle District of Florida has held that a professional "cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness, and which do not."[57]

But that is not what happened here. Daniel DeMarco (a partner at Hahn Loeser) testified that he failed to disclose the firm's relationship with RL BB OH because he did not learn of that relationship (or that Rialto was the attorney-in-fact for that entity and Multibank's managing member) until Multibank filed its objection.[58] There is no evidence that Mr. DeMarco was aware of the relationship and chose not to disclose it. And given the various relationships between the parties, the Court is comfortable that Hahn Loeser's failure to discover the relationship was not—as Multibank argues—the result of a "woefully inadequate conflict check system."

---

[54] *Id.* (quoting *In re Rusty Jones, Inc.*, 134 B.R. 321, 345 (Bankr. N.D. Ill. 1991)).

[55] *Id.* (quoting *In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925, 932 (2d Cir. 1979)).

[56] 417 F.2d 1302, 1304 (9th Cir. 1969).

[57] *In re Keller Fin. Servs., Inc.*, 243 B.R. 806, 812 (Bankr. M.D. Fla. 1999).

[58] Doc. No. 145, ¶ 3.

Multibank is correct that the failure to adequately disclose potential conflict under Rule 2014 can, in some instances, warrant disqualification.[59]  The Eleventh Circuit, however, has recently observed that "[n]either Rule 2014 nor the Bankruptcy Code mandates a sanction for violation of Rule 2014."  Instead, the nature and extent of the penalty is generally left to the bankruptcy court's discretion.

The Court concludes that Hahn Loeser's inadvertent failure to disclose in this case does not rise to the level of the failure to disclose in *Leslie Fay*—principally relied on by Multibank— where the bankruptcy court held that the failure to disclose warranted disqualification. At this point, the Court determines that no sanction is warranted. And in any event, disqualification— based on Hahn Loeser's failure to disclose—is not warranted in this case.

## Conclusion

Based on the foregoing, the Court concludes that Hahn Loeser does not hold or represent an interest adverse to the bankruptcy estate and that it is disinterested.  Accordingly, Multibank's objection to the Debtor's application to employ Hahn Loeser should be overruled, and the Debtor's application to employ the firm should be granted. The Court will enter an Order consistent with this Opinion.

**DATED** in Chambers at Fort Myers, Florida, on August 31, 2011                    .

_____
Jeffery P. Hopkins
United States Bankruptcy Judge

Copies to be provided by CM/ECF service.

---

[59] *In re Leslie Fay Cos., Inc.*, 175 B.R. at 533.